### IN HOUSTON SUPERIOR COURT.

### CENTRAL BANK *vs.* H. KENDRICK and his Securities.

Where the sta-
tute required

THE facts in this case are as follows :—By the third section

of the act of 1824, (pamphlet, page 90,) on the subject of the Macon Bridge, certain commissioners thereof were authorized to rent the same annually at public outcry to the highest bidder, taking *bond* and security, for the faithful payment to the State, of the sum for which the bridge should rent. The bridge (which was the property of the State.) was rented accordingly. In the year ——— Harvey Kendrick became the highest bidder, and the commissioners took his promissory *note* with security for the amount of the rent. By virtue of the act of 1828, incorporating the Central Bank, all debts due the State were vested in said Bank, and under the authority of said act the note above mentioned was transferred to said Bank. An action was instituted upon the note by the Bank, and the defendants pleaded that the note was void, not having been taken in conformity with the statute which requires a *bond*. The plea was overruled by the court, and a verdict rendered for the plaintiffs. Whereupon a motion for a new trial was made, upon the ground of error in the court, in overruling the plea. A rule *nisi* was granted, and the question to be determined is, shall the plea prevail? My opinion is, that it ought not to be sustained. The taking of a promissory note, although not in conformity with the *mere letter,* was certainly not violative of the *spirit* and *object* of the law. It is hardly necessary to remark that the bond intended by the statute was of course to be a mere money bond, viz. a written engagement under the hands and seals of the obligor, and his securities, binding themselves to pay a certain sum of money at a certain time. Now as to the end in view, and the obligations incurred, there is no difference between such a bond and a promissory note, executed by the same parties, and for the same sum, and payable at the same time.

The difference is only in the *form* of the undertaking; the substance is the same in each case. A promissory note is not exempt from the operation of the statute of limitations for so long a period as a bond—but in that respect, (if the maxim *" nullum tempus occurrit regi"* would not apply in a case of this kind) the taking of a note instead of a bond was *beneficial* to the defendants, and furnishes no ground of legitimate objection on their part. For every purpose contemplated by the legislature, the taking of a promissory note was a *substantial,* though not a literal compliance with the statute. For that part of the statute which designates a bond as the security to be taken, I regard as directory to the commissioners, but not as absolutely *prohibitory* of every other form of security. On the part of the defendants an attempt has been made to analogize the present case to cases which have arisen under the statute 23 Hen. 6. c. 9. in relation to bail bonds. As to bail bonds it is true the courts have frequently adjudicated, that any variance from the form and condition required

---

HOUSTON.

CENTRAL BANK *v.* KENDRICK.

*bond* with security to be taken for the rent of a public bridge, and a promissory *note* was taken——suit was instituted upon the note, and the maker pleaded that the note was void, because the statute which required a bond had not been complied with; The plea was overruled.—— A motion was then made for a new trial on the ground that the court erred in overruling the plea, which motion was refused.

Where there has been a substantial compliance with the law, the want of a rigid comformity with the mere letter of a statute requiring a bond to be taken, is not a fatal objection to the bond:

But if the statute prescribes the form and condition of the bond, and declares all bonds taken in any other form void, the bond prescribed should be strictly pursued.

HOUSTON.

CENTRAL
BANK
*v.*
KENDRICK.

by statute is fatal; and for the obvious reason that the statute is not only imperative as to the form and condition of the security, but expressly enacts that every security other than that prescribed by the statute shall be void. 10 Co. 101. 7 T. Rep. 109. 1 T. Rep. 418. 4 East, 568. 1 Archbold's Practice, 74. Besides, the principal object of the statute was to prevent the extortion, and oppressive exactions to which defendants were often subjected by sheriffs, *colore officii,* previous to the statute. There is no analogy then between the st. 23 H. 6. and the act of 1824 under which the commissioners acted. They are equally dissimilar in their objects and terms. One was enacted to correct *abuses,* and prescribes the form and requisites of a bail security, at the same time declaring every obligation different therefrom to be void. The object of the other was, to invest certain commissioners with authority to rent a certain portion of the public property. It directs them to take bond and security from the lessee for the payment of the rent, but does not inhibit them from taking any other equivalent security; nor does it declare that any security other than a bond, shall be void. There are essential points of difference between the two statutes. The statute of New York, on the subject of bail bonds, was copied from the English statute. Hence, the remarks made concerning the latter, will apply with equal force to the former, and to the cases which have occurred under it, some of which have been cited on the part of the defendants. 8 John. Rep. 76. 7 Ib. 157. 19 Ib. 223.

That there is a well founded distinction between an imperative requisition of a statute, and a clause merely directory to an officer, is illustrated even in the case of a bail bond. Thus a sheriff may take a bond with *one security* only, notwithstanding the statute mentions *securities* in the plural number. 2 Saunders, 61 c. 1 Archb. Prac. 75. Again: the st. 12 Geo. 1. c. 29, enacts that the sheriff shall take bail for the sum endorsed on the writ and no more, yet if the bond be taken for more, it will not avoid it if no intention to oppress the defendant appear. 2 Wils. 60. 1 Burr. 331. 1 Archb. Prac. 74. The same distinction is supported in the case of Speake *et al. v.* U. States, 9 Cranch, 28, in which the court held "that a bond taken by virtue of the first section of the embargo law of January, 1808, was not void, although taken *after* the vessel had sailed, by consent of parties, the statute as to the time of taking the bond was merely directory to the collector." On the subject of statutory bonds generally, I am aware that there are *dicta,* and some decisions, which go the extent, that the insertion of conditions not authorized by law, renders such bonds void *in toto.* 3 Wash. C. C. Rep. 10. This point however does not occur in the present case. If it did, it might be well worthy of consideration, whether it

would not better comport with reason and justice that the unauthorized conditions only, should be held void.(a) 1 Gallis. 86. But without engaging in that inquiry now, I will remark that the present case, does not fall within the reason of those authorities, in which such bonds are held to be void, as no onerous or unauthorized conditions have been exacted from the defendants. The obligation incurred by them under their contract, is only co-extensive with that which the legislature intended to impose. The departure from the statute, consists in the *form*, not in the *substance* of the contract. Where there has been a substantial compliance with the law, the want of a rigid conformity with the mere letter of a statute requiring a bond to be taken, is not a fatal objection to the bond. In the case of the U. States *v.* Morgan *et al.* 3 Wash. C. C. Rep. 10. the court held, that although the second section of the embargo law of December, 1807, directs the bond which is therein required, to be given *to the collector*, yet it is valid if taken to the *United States*, (see also U. States *vs.* Smith *et al.* 2 Hall's American Law Journal, 458.)

The case of Cole *et al. v.* Gower and Peggott, 6 East, 110, has been cited on the part of the defendant. In that case, certain parish officers had taken from the putative father of a bastard child, a promissory note for an absolute sum, whereas by the st. 6 Geo. 2 c. 31, they were only authorized to take security from him to *indemnify* the parish. Upon a suit brought upon the note, the defendants pleaded a tender of a sum less than the note called for, as the amount of the charge actually sustained by the parish. The court held that the parish officers were not authorized to take a note for an absolute sum, and that the plaintiffs could not recover beyond the amount tendered. At the first blush this case seems to be somewhat in point, but it is really not so. The taking of a note for an absolute sum, was not only contrary to the letter, but to the whole spirit of the law. By the statute, the liability of the putative father was limited to the mere indemnity of the parish; but by taking a note for an absolute sum, the statutory measure of his liability was wholly disregarded, and an arbitrary one substituted. On the one hand if the amount of the note *exceeded* the actual charge incurred by the parish, then more was exacted from the defendant than the law required; on the other hand, if the amount of the note was *less* than the actual charge, then the parish was not indemnified, and the object of the law was defeated. The proceeding too as was justly observed by the court, was contrary to public policy. Grose, J. said " that the parish officers could not convert a power given to them for the mere purpose of indemnity into a matter of bargain and speculation upon the life and death of the child, thereby making it the interest of

(a) See ante, p. 22.

HOUSTON.

CENTRAL
BANK
*v.*
KENDRICK.

the parish to get rid of the child as soon as possible." To show the want of analogy between this case in East, and the present, it is only necessary to observe, that the commissioners of the Macon Bridge, in taking a note, did not vary in the least degree the legal measure of the defendant's liability, and that the transaction was in no wise inconsistent with public policy.

Authorities relating to mercantile and commercial agencies have been adduced to show that an agent acting under a particular, and not a general authority, cannot bind his principal beyond the extent of the authority granted. Paley on Agency, 139. 2 John. Rep. 48. 3 T. R. 757. The doctrine is admitted, but the present case does not fall within its limits. If the defendants were *principals*, seeking to avoid some act of *their* agent, upon the ground that he had transcended his power, then the authorities cited would not be inapplicable. The commissioners however by taking a promissory note, did not subject the State, whose agents they were, to any unauthorized liability. If this were a case of private commercial agency, another principle no less true than that which has been already stated would apply. It is this: although an agent cannot bind his principal by an act exceeding the agent's authority, the want of authority may be supplied by a subsequent express or implied ratification of the act by the principal, "*omnis ratihabitio retrotrahitur et mandato priori æquiparatur.*" 1 Bos. & Pul. 316. 13 John. 367. 2 John Cas. 424. 1 Livermore on Agency, 44. In this instance, the note taken by the commissioners was accepted by the State through its proper public functionary, and under the authority of an act of the legislature, it has been transferred and delivered to the plaintiffs as an evidence of debt due to the State. Similar acts of adoption in the case of a private mercantile agency would cure any defect of authority on the part of the agent. I do not conceive it to be necessary to insist upon the application of this principle to the present case; but advert to it to show that the defendants can derive no aid from the law of commercial agencies. As a general proposition it is not denied that a special or a particular authority must be strictly pursued. But in the several cases cited on the part of the defendants, wherein the principle has been practically applied, it will be found that the rights, duties, obligations, or liabilities, which were attempted to be created by an undue execution of a limited authority, were in some degree variant from those for the creation of which the power was given. Hence the decision, that such an execution of a limited power is not valid. But from the manner in which the commissioners of the Macon Bridge executed the authority delegated to them, no such variance results. Under the promissory note which they accepted, the right which thereby accrued to the State, and the obligation and liability incurred

by the makers were exactly commensurate with those which it was the object of the statute to create ; to wit, a right on the part of the State to receive, and a corresponding obligation on the part of the lessee of the bridge and his securities, to pay, a certain sum of money at a specified period.

Reference has been made by defendant's counsel to a class of cases which have arisen under special statutory powers affecting the property and vested rights of individuals without their assent. In all such cases it is admitted that a strict pursuance of the authority delegated is indispensable. 1 Burr. 377. Cowp. 26. 7 T. R. 363. 3 John. Cas. 107. Thus it has been frequently determined that a collector of taxes or other officer empowered in particular cases to sell land for taxes, must strictly pursue the statutory directions in every matter which the law required to precede the exercise of the power delegated to him : and that no title is conveyed by a sale when any pre-requisite act has been omitted. 4 Wheat. 77. 6 Ib. 119. 4 Cranch. 402. 9 Ib. 64. It is an obvious dictate of justice, that no man shall be deprived of his property, *against his will*, except under the circumstances defined, and in the manner prescribed by law. But these decisions do not reach the case under consideration. The authority of the commissioners of the Macon Bridge was not a power affecting compulsorily the private interests of individuals. The defendants were *voluntary* parties to the instrument now sought to be invalidated.

The doctrine of powers by which estates are limited and settled, has been referred to by counsel. 1 T. R. 707. Willes, 169. That doctrine however has but little application to a case like the present. In the case of Taylor *v.* Horde, *et al.*, 1 Burr. 120, Lord Mansfield doubtless laid down the correct rule in relation to the construction of such powers. " The *intent* of the parties who gave the power, ought to govern every construction. He to whom it is given has a right to enjoy the full exercise of it : they over whose estate it is given have a right to say it shall not be exceeded ; the condition shall not be evaded ; it shall be strictly pursued in form and substance." The reason that such powers are to be strictly pursued, is that the rights of remainder-men or parties having reversionary interests in the estate, are connected with, and affected by the execution of such powers, a reason wholly foreign to the case before the court.

Finally, the note was given for a valuable consideration,— it was voluntarily executed by the defendants,—it created no right in the State, and imposed no obligation upon the defendants beyond the purview of the statute ; but the right on the one hand, and the correlative obligation on the other are the same as would have arisen under the security mentioned in the statute. I hold, therefore, that the commissioners *sub-*

HOUSTON.

CENTRAL
BANK
*v.*
KENDRICK.

*stantially* executed their power, and that the note is not void.*

Rule *nisi* for a new trial discharged, and execution ordered to proceed.

----

### IN CHATHAM SUPERIOR COURT, JULY, 1831.

----

* NOTE.—This case was submitted to the convention of Judges in November, 1830, by Judge Strong. The decision which he made in the case was confirmed by a majority of the Judges then present. Judge Lamar reduced his opinion to writing, of which the above is a copy, and it was entered on the minutes of the court, with the final order in the case. It may therefore be considered as having the sanction of a majority of the convention.